Good morning. Do we have counsel for the appellant here? You should sit at the counsel table so that we know. We are ready to hear our first case for this morning, McDonald v. McGrath. And it must be Ms. McDonald? Yes, ma'am. And will you be arguing for yourself? Yes, ma'am. All right. Well, then you may come up. Okay. And that will tell you the time you have left. May it please the court. My name is Jan Kowalski McDonald, and I'm a candidate for the office of the Cook County Clerk on the March 20, 2018 Democratic primary ballot. And I know you're going to say the March 20, 2018 Democratic primary has already taken place. And I'm sure my opponent's going to be talking about that in depth. Not to mention the general election. Not to mention the general election in November. Absolutely right, Your Honor. But before we get to that, let me just tell you why I'm here. The sole issue in my mind is whether the Cook County Democratic primary ballot, with so many unopposed candidates, meets constitutional scrutiny. Now, the district court erred in finding that I was not reasonably likely to succeed on the merits of finding that Section 7-10 of the Illinois Election Code is spatially unconstitutional under the Equal Protection Clause in two distinct ways. But before you get into that, I really do think, as you've anticipated, you need to explain to us what this court can do about elections that have already happened. Because it's not clear at all to me, other than it's a theoretical matter, there's anything here. What possible... Are you asking us to undo the election and have it redone? What do you think the court can do? Yes, Your Honor. You can do that. You have the power. You're the 7th Circuit of the United States of America. And we don't live in an oligarchy where the Democratic Party in Cook County can say, oh no, we can only have unopposed candidates. There's been a wrong that's been done here, and I'm asking you to remedy it. And if that remedy means the extraordinary relief of ordering another primary, then so be it. Because the people are clamoring for candidates to be on the ballot. Right now in Cook County for this past election cycle, I think we had 3 out of the 5 constitutional officers, 3 were unopposed at a time when candidates are clamoring to be on the ballot, like myself. That's why this is, as applied, this is discriminatory. It discriminates against candidates like myself that are not slated by the party. And let me tell you how it discriminates. It discriminates because the compelling state interest we know is 5,000 signatures. If you read Section 7-10, the first section of it, it applies to the gubernatorial candidates. And to be a governor, to run for governor as a candidate, I only needed to submit 5,000 signatures. But here, for the Cook County Clerk's Office, a lesser office ostensibly than the governor of the state of Illinois, definitely a smaller geographical area, why would I need 8,236 signatures? The compelling state interest is 5,000. Why does Cook County have a compelling county interest that's greater than the state of Illinois? And mind you, I want to harken back to my days back in law school, which is 25 years ago. But I remember my professor telling me, in the simplest terms, when you're talking constitutional law, pretend you're talking to a kindergartner. What does equal protection mean? And for me, equal protection means treating the same people similarly. We're going to treat all third graders the same. We're going to treat all fourth graders the same. I'm not a constitutional scholar, but that's what I remember from law school, Your Honor. And I'm a similarly situated candidate. I should have no more or no less than the other candidates. The governor, he needed 5,000 signatures. For an unslated candidate like me, I needed 8,236 signatures. And then for a slated candidate, like the ones that were slated by the Cook County Democratic Primary, they only needed, like in this case, there were 5 on the slate. So they only needed a total of 1,648 signatures apiece. 1,648 for the slated candidate, 8,236 for me. And only 5,000 for the governor. How is there a compelling county interest which is greater than the state? It's discriminatory. And I'd like you to right the wrong. Let's put aside whether we would have the power to grant the extraordinary relief of setting aside the election. As far as I can tell, you didn't ask for that. I mean, you're appealing the denial of a preliminary injunction asking us to ask the district court and now appealing the district court's refusal to enjoin the election before it happened. And I just looked back at your brief to be sure that was right. You didn't ask for that relief. So even assuming, which that's a big assumption, put that aside, you haven't asked for that. So you do have to address the mootness question on its own terms. You've made this argument that it's capable of repetition and avoiding review. Do you want to address that? Because that's kind of where your case is going to rise or fall. Thank you, Your Honor. I appreciate you letting me address that issue. And before I forget, I need to reserve two minutes for rebuttal. You need to watch the time. When it says two minutes, you need to wrap up and sit down. Thank you, Your Honor. Believe it or not, I believe, and I don't have it file stamped in front of me, that I submitted my brief way back in June. I'm looking feverishly at the docket now. July 11th. July 11th. And I believe they submitted their brief in September. And I believe, here it is, September 17th was my reply. And all of this was fully briefed before the general election that was in November. So the mere passage of time cannot moot these issues, Your Honor. I know you're going to say, well, this is extraordinary. We've already had the general election. Judge Barrett's asking a more focused question. You were asking for a preliminary injunction focused on, first, the Democratic primary and then construing it generously the election in November.  So it's not really the same preliminary injunction. Injunctions are powerful medicine. They have to be very specific. Whatever was going on with the underlying merits, the preliminary injunction seems to have come and gone. If I may, Your Honor, in my reply brief, I addressed just this issue. Because you can remedy the wrong that's been done here by holding another election. And let me tell you why it's not prejudicial to any other candidate. There was only one candidate's name that appeared on the primary ballot. And there was only one candidate's name that appeared on the November election. And in my reply brief, I noted that because there was no other candidate, there was no fear that I was going to impair anybody else's rights. In this case, there was only one candidate on the November ballot, and there was only one candidate on the March ballot. So there's no harm to any other candidate. The people are demanding, Your Honor, that we have freedom at the election booth. A ballot with only one name is non-constitutional. It cannot withstand constitution. There are a lot of ballots with only one name. I mean, I will just draw on my personal experience of voting for a long time. That it is not at all uncommon, particularly for lower-down-on-the-ballot races. I mean, there's one person for the forest preserve. There's one person for other things. It doesn't mean other people couldn't get on the ballot. And I think in your case, some people did meet this signature requirement, even though you regarded it as an onerous one. It's a percentage that has been upheld by this court before, 0.5%. Yes, absolutely, Your Honor. I'm not arguing with a 0.5%. Yes, you are, because that's where the 8,000-and-some number comes from. If everybody came in with 8,236 signatures, I wouldn't be objecting. But the woman who is now our Cook County clerk, who ran unopposed on the primary and on the general ballot, she only came in with 1,648 signatures. Because she had a slate. You were not a member of a slate. Correct, Your Honor. And there's been no grassroots candidate that's been able to make the ballot. And to my knowledge, there is no grassroots slate that I'm aware of, at least in the Cook County area. And you mentioned that lower-on-the-ballot, there should be more unopposed elections. Well, there are. I'm just saying, as a matter of fact, there are. And I'm sure that this is true throughout the United States. I can't believe this is unique to Cook County or northern Illinois. This is unique to Cook County, Your Honor. No, it's not. Your Honor, the Illinois courts are so corrupt that we cannot throw these rascals out of government. And let me tell you why. I went through the ballot challenge. You're in your rebuttal time, I'll just point out. Thank you, Your Honor. I thought you lost my train of thought here. Oh, during my hearing at the Illinois state court level, the state's attorney recused himself from my panel. He later unrecused. That's not constitutional either, Your Honor. May I reserve my remaining minute for rebuttal? Certainly. Thank you. Ms. McGrath. Good morning, Your Honors. May it please the Court. My name is Megan McGrath. I'm assistant state's attorney, and I'm here to represent the appellees in this matter. As an initial matter, as you've already pointed out, the plaintiff's appeal of the district court order denying her request for injunctive relief is now moot. And on that basis, this court should dismiss her appeal and remand the case to the district court with instructions to dismiss. Are there any other proceedings going on in the district court directed to the merits of the Illinois system? Your Honor, I'm aware of one, yes, that there is actually a case in this courthouse. There is a case that actually Ms. Kowalski McDonald attempted to become part of, and it involved other candidates who were actually making the same argument Ms. Kowalski originally made, that under the auspices of the Illinois Board of Elections versus Socialist Workers Party, you could not have a race where you had, excuse me, a campaign where a candidate needed to get more signatures for what they were referring to as a smaller office. That matter was, the preliminary injunction in that matter was sustained, and the case was later dismissed. One of the individuals, I believe it's a gentleman named Avala, who is running for sheriff, appealed it to this court, and last I checked, it's still in briefing. What is the status of this case in the district court? This is here on preliminary injunction. Correct. We have filed a motion to dismiss, and that's pending. That's pending in the district court, so the case is still alive in the district court. It is pending the outcome here. But that's what I'm trying to get at as well. It is possible to bring either a facial challenge or other kind of challenge against a voting system, if you will. There are such challenges. Some succeed, lots fail. So I'm wondering whether there is any ongoing merits challenge in the district court that would be still possible to adjudicate. I'm reluctant for us to say what's going on in the district court is moot. I can certainly see that a preliminary injunction directed to something that happened in March or November of this year, there's nothing we can do to change anything that happened in March or November of this year. But the merits is a different thing. That is true, Your Honor. And the case I mentioned previously regarding several other countywide elections that Appellee wasn't able to join, it is my understanding that the decision in that case has been appealed to this court. Unfortunately, and actually this brings up an interesting point. Has anybody called these matters to our attention? I can't remember. Did you mention these in your brief? I believe the cases were definitely cited in our briefing with the district court. And we relied on a lot of the arguments that have been made there. I think that also points out something that's unusual about this case, in that I'm representing Cook County and the Cook County Board. We are following an Illinois state rule, state law. This is the Illinois election code. There is no one from the state of Illinois present to defend the constitutionality of that law. And for the constant refrain of Cook County, this is unfair, Cook County is following Illinois state law. And as you said previously, Your Honor, the percentages, the standard that is in the Illinois state law has been found to be reasonable and constitutional. I'm just wondering, I was just looking at the table of citations in your brief. If you have not already filed something with the court, then perhaps both sides can file a letter calling our attention to these related cases, just for our convenience. Certainly, Your Honor, we can do that. Thank you. And then that goes to the previous argument that the standard at issue, if Your Honor wishes to discuss that other than the mootness argument, which I think speaks for itself. The election code is not facially constitutional. The essence of plaintiff's claim is that the requirement to be a Democratic Party candidate on a 2018 primary ballot for a county-wide office anywhere in the state of Illinois is unconstitutional because it is a higher number than required for the candidate of a statewide office. The example given was governor. Now, plaintiff here has not relied entirely on Illinois Board of Elections versus Socialist Workers Party. But previously, when this panel was asked to review that matter in a similar context, in the case of Boe versus Board of Election Commissioners of Chicago, it was a factually similar matter wherein ward committeemen in Chicago, so aldermanic committeemen, were compared to state committeemen. And aldermanic committeemen had to achieve a certain percentage of voters in their ward, whereas the state office was just given a flat number. And people who weren't able to get on the ballot for the aldermanic race claimed it was unfair under Socialist Workers Party. The court here in Boe said that that case can't be read as standing for the broad proposition that a slate may never impose a higher signature stand requirement for an office of smaller subdivision than the requirement imposed for an office of a larger subdivision. It is established that the state's interests in preserving the integrity of the electoral process and regulating the number of candidates on the ballot are compelling. And your honor, to address one of Ms. Kowalski's examples of evidence of why this statute is unconstitutional is the proliferation of what she claims proliferation of unopposed ballots. A similar argument was previously made before this court in Navarro versus Neal. And in that case, it was involving members of, kind of similarly, that they couldn't get enough individuals to run for particular offices. So people tried to get on the ballot, didn't reach the signature, so weren't on the ballot. And presented to this court that, well, this proves it. This proves that this isn't fair because we don't have people running here. And the court in Navarro said, no, that is not what proves its point here. That courts have affirmed ballot access laws involving signature requirements because the connection between these requirements and the important interest of the integrity of the elections is protected by those actions. The Supreme Court has never required the state to make a particularized showing of the existence of voter confusion, ballot overcrowding, or the presence of frivolous candidates prior to the imposition of reasonable restrictions to ballot access. So a state may, to prevent such harms from occurring in the first place, enact reasonable and non-discriminatory ballot access laws that preserve the important regulatory interest of preventing voter confusion and protecting the integrity of elections. And that here is exactly what the Illinois state law is attempting to do. Because the state is not required to list anyone who wants to stand for office, this panel held in Protect Marriage of Illinois versus Orr, ballot access, including the listing of candidates' name, must be tightly regulated for the protection of the democratic process. And there is prior evidence of that interest. Maybe not in this state, but actually in another state out west, in California, during the gubernatorial recall election, when Gray Davis was recalled as governor, they opened up the recall election to anyone who could meet the very low signature requirements and pay $3,500. As a result, the state of Illinois had 135,000 people running for governor. And the ballot confusion was incredibly high in that case. These laws exist to protect something similar from happening here. Now, can you clarify whether there were candidates for this office who met the $8,000 and some signature requirement? Ms. Foskell, I mentioned that the individual who won, Karen Yarborough, met the requirement. And, yes, it is true that she was a slated candidate. But you slated, right? And the numbers are toted up differently for the slated candidates because you can combine everyone in the slate, right? The slate will get a lower number. And the purpose of that is, again, that if a candidate or a candidate's party has already been established as a party that can go forward, that is what the slate recognizes, that as a member of a party, this is a person who is going to be a reasonable candidate. This is not going to be a frivolous candidate just taking up space on the ballot. This is someone who has support, structural support, to run an actual campaign. And that is why that standard exists. And that was also something that was recognized by this panel in TRIP. In that matter, there were candidates involving the Green Party. And the court said that, again, that may prevent harms to enact reasonable and nondiscriminatory ballot access laws to improve the integrity of elections and prevent voter confusion. And that is what the state law tends to do here and what Cook County did in applying the state law. This was not, and Your Honor mentioned it earlier, not every Cook County race was a single candidate. There was one that had three candidates. Previously in 2016, I believe, there were a number, again, of contested races. So uncontested races do not prove the point. What the point is, has been proved repeatedly, is that the standard the state of Illinois has set for these types of elections, the signature requirement for these types of elections, is reasonable and should be upheld. And this matter should be dismissed and referred to the district court for dismissal at that level as well. Okay, thank you very much. All right, Mrs. McDonald, you have about a minute. Thank you, Your Honor, for allowing me my rebuttal time. You're absolutely right. The numbers are toted up different. And in my book, that's called a violation of equal protection because similarly situated people are treated differently. The numbers are toted up. But let's talk about numbers. An injunction on injunctive relief, you can undo irreparable harm. So let me just address irreparable harm. Are you arguing, in essence, that the Illinois election code is unconstitutional? Yes, ma'am. All right. So there's usually a need to involve the attorney general of the state when such an argument is made. I understand that, Your Honor. Now, we can undo the irreparable harm here because luckily for me, my name was actually printed on the ballot, but the votes cast for me were not counted. Now, in Cook County, I know that 500,000 ballots were cast. And I know that the unopposed candidate received 220,000 ballots. And I know that 280,000 ballots that were cast were not counted. I submit to you that I won the election. That's irreparable harm, Your Honor. Okay, you need to wrap up. Yes, Your Honor. I submitted 22,057 signatures. And the races that opposing counsel referred to, they were contested on the ballot, but that's only because there was no challenge made at the primary level. Okay. All right, I think we'll have to leave it there, but we appreciate this. And thanks as well to Ms. McGrath. And we will take the case under advisement. Thank you.